CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
September 03, 2026
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| JESSICA L.,[1] <br> *Plaintiff*, <br> v. <br> COMMISSIONER OF SOCIAL SECURITY, <br> *Defendant*. | CASE NO. 6:25-CV-00054 <br> MEMORANDUM OPINION <br> JUDGE NORMAN K. MOON |

Plaintiff Jessica L. seeks judicial review of the Social Security Administration's determination that she was not disabled during the period between November 15, 2015, and July 1, 2022. Dkt. 1. Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to United States Magistrate Judge C. Kailani Memmer for a Report & Recommendation ("R&R"). Judge Memmer's July 16, 2026 R&R recommends affirming the Administrative Law Judge's ("ALJ's") decision. Dkt. 18. Jessica objected to the R&R, triggering this Court's obligation to undertake a *de novo* review of her objections. Dkt. 19; *see* 28 U.S.C. § 636(b)(1); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). Because the objections lack merit, the Court will adopt Judge Memmer's R&R in full.

## LEGAL STANDARD

In determining whether a person is disabled, an ALJ engages in a five-step process set forth in 20 C.F.R. §§ 404.1520(a)(4)(i)-(v). *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). This process requires the ALJ to:

---

[1] This Court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts only use the first name and last initial of the claimant in social security opinions.

(1) Assess whether a claimant engaged in substantial gainful activity during the alleged period of disability;

(2) Determine whether her impairments meet the regulation's severity and duration requirements;

(3) Ascertain whether her impairments rise to the level of those enumerated in the regulation;

(4) Consider whether she can perform past relevant work; and if not,

(5) Consider whether she can perform any other kind of work.

*See Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520. If the ALJ finds that the claimant has not been working (step one) and that their medical impairment meets the severity and duration requirements (step two), it then considers whether the impairment meets or equals one that the regulations specifically enumerate (step three); if so, the ALJ concludes that the claimant is disabled. *See Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). If, however, the first three steps are inconclusive, the ALJ must assess a claimant's Residual Functional Capacity ("RFC"), which is the most work-related activity the claimant can do despite her medically determinable impairments and the limitations they cause. *See id.* at 635; 20 C.F.R. §§ 404.1545(a), 416.945(a). Only after calculating the RFC will an ALJ turn to steps four and five.[2] *Lewis*, 858 F.3d at 861.

Objections to an R&R are reviewed *de novo*, but in the Social Security context the standard of scrutiny is light. The Court reviews the ALJ's decision to assess only whether (1) the ALJ applied the proper legal standards and (2) the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). The bar for substantial evidence "is not high," but the ALJ's decision must be supported by "more than a mere scintilla."

---

[2] It is the claimant's burden to demonstrate disability until step five, when the burden shifts to the Commissioner to demonstrate the claimant is not disabled. *See Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016).

*Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court does not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Because ALJs "are best positioned to decide which pieces of evidence are persuasive and which pieces of evidence are not," courts "won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake." *Drumgold v. Comm'r Soc. Sec.*, 144 F.4th 596, 604-05 (4th Cir. 2025).

## DISCUSSION

As Jessica does not object to the R&R's recitation of the factual background and claim history in this case, the Court incorporates that portion of the R&R here. *See* Dkt. 18 at 2-18. To summarize, Jessica applied for Supplemental Security Income and Disability Insurance Benefits based on a closed period of disability between November 15, 2015, and July 1, 2022. *Id.* at 2-3. The ALJ applied the five-step process. At the first step, the ALJ determined that Jessica had not engaged in substantial gainful activity during the closed period. R. 671.[3] At the second step, the ALJ found that Jessica had bipolar disorder, unspecified ADHD, PTSD, lumbar radiculopathy, sacroiliitis, low back pain, spinal stenosis, obesity, and headache disorder. *Id.* At the third step, the ALJ determined that none of these impairments individually or in combination met or medically equaled the severity of a presumptively disabling impairment. R. 672.

Accordingly, the ALJ performed a Residual Functional Capacity analysis, and found that Jessica had the RFC to perform medium work[4] with the following limitations:

---

3 The administrative record in this case can be found at Dkt. 6.

4 Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds. 20 C.F.R. § 404.1567(c). If someone can do medium work,

> [E]xcept the claimant can carry 20 pounds frequently and 40 pounds occasionally; can frequently stoop, kneel, crouch, crawl, and climb; can work in a no more than moderate noise environment (as defined by the SCO); cannot tolerate exposure to bright lights, defined as lights brighter than those found in a typical office setting; can understand, remember, and carry out simple instructions; cannot interact with the public; and can occasionally work around hazards such as exposed high places and unprotected moving mechanical parts.

R. 674. At the fourth step, the ALJ found Jessica was unable to perform any past relevant work. R. 684. At the fifth and final step, the ALJ identified jobs Jessica could perform that exist in significant numbers in the national economy, and consequently determined that Jessica was not disabled. R. 685-86.

Jessica challenges the RFC findings.

### A. <u>THE ALJ DID NOT IMPROPERLY DISREGARD JESSICA'S SUBJECTIVE EVIDENCE.</u>

Jessica alleges that the ALJ applied an incorrect legal standard in assessing her RFC. Dkt. 19 at 3-4. Specifically, Jessica argues that by not crediting her subjective complaints regarding her symptoms, the ALJ effectively required Jessica to put forward objective medical evidence supporting her subjective claims, improperly raising her burden of proof.[5] *Id.* In support, Jessica cites *Arakas v. Commissioner of Social Security*, which held that an ALJ "may not disregard an individual's statements about" their symptoms "solely because the objective medical evidence does not substantiate them." 983 F.3d 83, 95 (4th Cir. 2020) (internal quotation omitted); Dkt. 19 at 3-4. But Jessica's argument overreads *Arakas* and overlooks the administrative record.

*Arakas* held that an ALJ may not disregard subjective complaints solely because of a lack of corroborating objective medical evidence. 983 F.3d at 95. This situation is different. The ALJ

---

they can necessarily perform sedentary and light work. *Id.*

[5] Although the claimant bears the burden of proving that they are disabled, a claimant is "entitled to rely exclusively on subjective evidence to prove" that her pain is so severe that it prevents her from working an eight-hour day. *Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006).

did not reject Jessica's statements because of a *lack* of objective evidence; he rejected them because the available evidence affirmatively undercut Jessica's statements. *See* R. 681 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."). That approach is lawful. A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence." *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996).[6]

Although *Arakas* laid out an exception to this rule for diseases that do not produce objective medical evidence, Jessica has not argued that any of her impairments fall into this category. *See Arakas*, 983 F.3d at 97 ("ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence."); *Shelley C. v. Comm'r Soc. Sec. Admin.*, 61 F.4th 341, 361-62 (4th Cir. 2023) (finding that major depressive disorder does not produce objective evidence).[7] And even if she had, Jessica's objection would still fail because the ALJ also relied on subjective evidence in making his RFC findings. *See, e.g.*, R. 681 (considering Jessica's subjective report that "she had experienced migraines since she was a child, yet she had been able to work full-time in the past, and she did not indicate in testimony that she had lost prior jobs due to headaches"). Because the ALJ applied the correct legal standard by considering both objective and subjective evidence, the Court will overrule Jessica's objection

---

[6] *See also* 20 C.F.R. § 404.1529(c)(2) (objective evidence is a "useful indicator to assist" an ALJ "in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [her] ability to work").

[7] *Cf.* R. 671 (identifying Jessica's impairments as bipolar disorder, unspecified ADHD, PTSD, lumbar radiculopathy, sacroiliitis, low back pain, spinal stenosis, obesity, and headache disorder). To the extent that Jessica argues that all "mental health impairments" fall into the exception for impairments that do not produce objective evidence, *see* Dkt. 19 at 8, she does not cite any authority for that proposition, and the Court is not aware of any.

that her RFC was incorrectly assessed.

### B. The ALJ Adequately Explained Why Evidence Outside the Closed Period of Disability was Probative.

The Social Security Administration defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant may be entitled to a closed period of disability if the evidence shows she was disabled for a continuous period of 12 months or more, but is no longer disabled at the time of adjudication. *See Jeremiah S. v. O'Malley*, 2024 WL 848629, at *8 (E.D. Va. Feb. 1, 2024). "Generally, an 'ALJ should consider evidence within the closed period of disability to determine whether the Plaintiff was entitled to benefits for that limited duration,' but an ALJ may 'consider evidence outside a closed period of disability if that evidence is probative of disability within the closed period.'" *Bosher v. Kijakazi*, 2021 WL 5181654, at *4 (W.D.N.C. Nov. 8, 2021) (quoting *Charlene L. v. Saul*, 2021 WL 725822, at *8 (E.D. Va. Feb. 3, 2021) and *Hill v. Colvin*, 2016 WL 3181762, at *10 (D. Md. June 8, 2016)).

#### 1. Headaches

Jessica argues that the ALJ failed to explain why evidence about her headache disorder after the closed period of disability was probative of whether she was disabled during the closed period. Dkt. 19 at 4. The Court disagrees.

The ALJ performed a longitudinal analysis in which he compared Jessica's reported symptoms within the closed period to reported symptoms outside the closed period. Most relevant to Jessica's objection, the ALJ noted that Jessica continued to report severe headaches in June 2022 continuing through 2023, but that she returned to work despite these headaches. R. 681

(observing that "[i]n June 2023, she reported nearly daily headaches with light and sound sensitivity and nausea, yet she told her case manager she was working seven days a week").[8] The ALJ reasoned that "[t]his sustained work activity in spite of reported increases in headaches is indicative of a less restrictive range of symptoms than otherwise alleged." R. 681. In other words, the ALJ found that if Jessica could work with severe headaches from 2022 to 2023, she could have worked with equally or less severe headaches between 2015 to 2022 (*i.e.*, the closed period). Regardless of whether this Court would have weighed the evidence differently, longitudinal evidence of Jessica's headaches is "such relevant evidence as a reasonable mind might accept as adequate" for the ALJ's conclusion. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

Moreover, even if the ALJ erred by considering evidence outside the closed period, he nonetheless considered evidence within the closed period that supports his finding that headaches would not have prevented Jessica from working between 2015 and 2022.[9] In addition to the "consistent demonstration of activities of daily living" during the closed period that undergirds the ALJ's analysis as to all impairments, R. 683, that evidence included a limited record of headaches prior to January 2018, followed by a two-year break with no mention of headaches in the medical record until March 2020. *See* R. 681. The ALJ also accommodated any ongoing headache

---

[8] The ALJ also considered evidence from before the alleged period of disability, considering Jessica's report that "she had experienced migraines since she was a child, yet she had been able to work full-time in the past, and she did not indicate in testimony that she had lost prior jobs due to headaches." R. 681.

[9] Although some district courts have doubted an ALJ's ability to consider evidence outside a closed period of disability, *see Charlene L.*, 2021 WL 725822, at *8, Jessica does not make that argument here. Instead, her objection is limited to the sufficiency of the ALJ's explanation as to *why* such evidence was probative. *See* Dkt. 19 at 4 ("[T]he ALJ failed to explain how evidence in 2023 undermined plaintiff's motion for a closed period of disability from November 15, 2014 to July 1, 2022[.]"). The Court is not aware of any binding precedent compelling the *Charlene* court's view, and notes that other district courts have not considered the use of evidence outside the closed period to be so limited. *See, e.g.*, *Bosher*, 2021 WL 5181654, at *4; *Hill*, 2016 WL 3181762, at *10.

symptoms in the RFC, which limited Jessica to "work in a no more than moderate noise environment (as defined by the SCO)" and noted that Jessica "cannot tolerate exposure to bright lights, defined as lights brighter than those found in a typical office setting." R. 674; *see also* R. 681. Where the ALJ considered this evidence and found no disability, Jessica's objection essentially asks the Court to do what is forbidden: "re-weigh conflicting evidence, make credibility determinations, and substitute its judgment for that of the ALJ." *Craig*, 76 F.3d at 589 (citation modified). This the Court cannot do.

For all these reasons, Jessica's objection that the ALJ's conclusions about her headaches were unsupported by evidence must be overruled.

**2. ADHD, Bipolar Disorder, and PTSD**

Jessica also raises a similar argument that the ALJ improperly considered evidence of her ADHD, Bipolar disorder, and PTSD from outside the closed period of disability. Dkt. 19 at 2-3. That objection fails for the same reasons. Here again the ALJ performed a longitudinal analysis, *see* R. 673-74, 676-80, which led the ALJ to observe consistency in Jessica's mental abilities from the time of the closed period through the time she successfully returned to work. *See, e.g.*, R. 678 (Jessica "was able to pay attention and complete tasks" in May 2019"); R. 683 ("[S]he had intact concentration in logical thinking throughout the record."). It also led the ALJ to observe a consistency in Jessica's ability to function both during and after the alleged period of disability. *See* R. 683 (considering Jessica's "consistent demonstration of activities of daily living, including caring for very young children, management of her medical condition, and return to work"); *see also* R. 247-51 (Jessica's report that during the alleged period of disability, she cared for her personal needs, prepared complete meals daily, cleaned her home, shopped in stores, handled her finances, helped her Grandmother, used Facebook, and socialized with others). And it led the ALJ

to consider subjective and objective evidence that medication had been helpful to Jessica, and that she took the same medication both during and after the alleged period of disability. *See, e.g.*, R. 679 (noting that Jessica reported that "Vraylar worked" and "her depression was stable"); R. 683 (observing that Jessica began taking Vraylar and Adderall in 2017, and that the record "indicate[d] improvement in her mood with medications, particularly Vraylar").

As with Jessica's headaches, evidence that Jessica's mental impairment symptoms were consistent across the period in which she claimed disability and the period in which she was able to work is probative of whether she was in fact disabled. Likewise, the ALJ considered evidence from within the closed period of disability that also supports his conclusion, including Jessica's daily activities, mental health symptoms, and abilities as reflected in the medical record. *See* R. 683. Accordingly, Jessica's objection that evidence did not support the ALJ's findings about her ADHD, bipolar disorder, and PTSD must be overruled.

### C. THE ALJ PROPERLY EXPLAINED HOW HIS RFC ACCOMMODATED JESSICA'S MENTAL IMPAIRMENTS.

Next Jessica objects that the ALJ failed to explain how his RFC finding addresses or accommodates Jessica's mental impairments. Dkt. 19 at 2. This objection fails. The ALJ was required to "identify evidence that supports his conclusion and 'build an accurate and logical bridge from that evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). He did so.

After reviewing a significant amount of evidence regarding Jessica's mental impairments, the ALJ concluded the following:

> Overall, the record does indicate improvement in her mood with medications, particularly Vraylar. However, she had intact concentration in logical thinking throughout the record. The limitation to tasks with simple instructions

> accommodates her anxiety and depression, as such work would not require much concentration effort. She had an irritable mood in some mental status examinations, but providers did not note belligerence. The prohibition on public interaction accommodates her irritability.

R. 683. Although this statement alone arguably constitutes a "logical bridge" that a reasonable mind might accept as adequate, the ALJ continued to address and accommodate Jessica's mental impairments via the opinions of Drs. Howard Leizer and Leslie Montgomery. *See* R. 683. After finding Dr. Leizer's opinion "not persuasive" because it *insufficiently* accommodated Jessica's mental impairments,[10] the ALJ thoroughly explained why he agreed with Dr. Montgomery that Jessica should be accommodated to limited public interaction, but disagreed that she should be limited to 1-to-2 step instructions at work:

> State Agency provider Leslie Montgomery, Ph.D. gave the claimant moderate limitations in the second and third paragraph B areas and limited her to 1-to-2 step instructions with limited public interaction. She could work a normal workday with occasional breaks. Montgomery noted the claimant had a stable mood in May 2019 and reported doing "pretty good" in July 2019, and that her concentration had improved with psychological treatment. (5A; 6A). The record does indicate improvement in mood stability with medication, but it does not show concentration abnormalities in mental status examinations even earlier. She had circumstantial thinking in December 2022, but was still able to work. The record does not show memory or cognitive abnormalities. Considering the claimant's consistent demonstration of activities of daily living, including caring for very young children, management of her medical condition, and return to work, a restriction to the performance of only 1-to-2 step instructions is not supported. Rather, a restriction to simple instructions is consistent with the overall treatment record. She had some irritability that indicates she should not have to deal with the public. Dr. Montgomery's determination is somewhat persuasive.

R. 683.

The RFC finding included precisely the "narrative discussion describing how the evidence supports each conclusion" that an ALJ is obligated to provide. SSR 96-8p, 1996 WL 374184, at

---

[10] *See* R. 683 ("The record indicates her mental conditions are more significant [than Dr. Leizer believed], and [his] determinations are not persuasive.").

*7 (July 2, 1996). The objection will be overruled.

### D. The ALJ made Specific Findings Regarding Jessica's Ability to Work on a Regular Basis.

Jessica's final objection is that the ALJ failed to make specific findings regarding her ability to work on a regular basis. Dkt. 19 at 5. An ALJ making an RFC finding is required to evaluate the plaintiff's "'ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis,' meaning '8 hours a day, for 5 days a week, or an equivalent work schedule.'" *Rogers v. Kijakazi*, 62 F.4th 872, 880 (4th Cir. 2023) (quoting SSR 96-8p, 1996 WL 374184, at *1). Jessica argues that the ALJ failed to consider whether her impairments would cause her to experience episodes of pain necessitating breaks from work and if so, how often those breaks would occur. The Court disagrees.

The ALJ specifically considered the impact of pain on Jessica's ability to work on a regular basis by considering medical record evidence from pain management providers.[11] Specifically, the ALJ concluded that a "restricted range of medium exertional lifting, carrying, standing, and walking, with frequent stooping and crouching accommodates [Jessica's] back, hip, and obesity issues." R. 681-82. The ALJ also considered the opinion of Dr. Heidi Rogers, who opined that Jessica "would be able to sit, stand, and walk normally in an eight-hour day with normal breaks." R. 682. The ALJ also noted that, per Dr. Rogers:

> [Jessica] could carry 20 pounds frequently and 40 pounds occasionally. She could frequently stoop and crouch. She had no manipulative limitations . . . . She had no visual or environmental limitations . . . . [She had] normal gait and [was] without significant reduction in range of motion, strength, reflexes, or sensation, consistent

---

[11] The ALJ noted that "[i]n the pain management provider visits," Jessica "had some abnormalities of tenderness and reduced range of motion, as well as a finding of positive straight leg raising. However, she had normal gait and normal strength." R. 681. He also noted that "[i]n the consultative examination, she had a steady gait and full strength." *Id.* He further observed that throughout the record Jessica's BMI fluctuated, at its worst "indicating mild to moderate obesity that would not cause much back difficulty." *Id.*

> with the generally broad range of physical functioning. Those conclusions are also consistent with the claimant's longitudinal treatment record as discussed above.

R. 682. This opinion was consistent with the opinion of Dr. Montgomery, who, as the ALJ noted, reported that Jessica "could work a normal workday with occasional breaks." R. 683.

In light of this substantial evidence, the ALJ found that Jessica had the Residual Functional Capacity to perform a modest range of medium work with postural, environmental, and mental limitations. *See* R. 674. Having explicitly addressed and accommodated Jessica's pain, the ALJ's RFC conclusion "implicitly contained a finding" that Jessica "physically is able to work an eight hour day." *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). Jessica's objection will be overruled.

## CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ's decision applied the correct legal standards and is supported by substantial evidence. The Court will enter a separate final judgment adopting Judge Memmer's R&R, Dkt. 18.

The Clerk of Court is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is **SO ORDERED**.

Entered this 3rd day of September, 2026.

Norman K. Moon

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE